UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

          Plaintiff,

v.

DANA COOPER,

          Defendant.

Criminal No. 15-cr-20155

Hon. Linda V. Parker
United States District Judge

---

**GOVERNMENT'S SENTENCING MEMORANDUM**

---

Sentencing for this matter is set for August 28, 2015, following Cooper's plea of guilty to count one, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c) and count two, possession of a firearm by a felon in violation of 18 U.S.C. §922(g). The parties, along with PSR, agree that the appropriate sentencing guideline range is 90-97 months. (PSR ¶60). The government submits this sentencing memorandum in support of a sentence of 90 months. Cooper has put forth an impressive array of support from those close to him for this sentencing, and that is commendable. (Def. Sent. Mem Ex. A-M). Yet a balancing of all the factors outlined in 18 U.S.C.

˘ 1 ˘

§3553(a) renders a guideline sentence appropriate based upon the seriousness of this offense and the continued escalation of his criminal behavior

> I. A Sentence of 90 Months Imprisonment is appropriate
>
> A. Cooper had significant quantities of numerous kinds of drugs.

The Court must consider the nature and circumstances of the offense when determining a sentence. 18 U.S.C. §3553(a)(1). Here, the offense is very serious. Cooper did not have a bag of marijuana or a few grams of crack. Rather, Cooper committed a controlled substance offense by possessing relatively large amounts of numerous controlled substances. Cooper had eight ounces of cocaine, approximately an ounce of cocaine base, approximately half of an ounce of heroin, one pound of marijuana, and twelve marijuana plants. (PSR ¶11).1 Belying Cooper's claims that he only "middled" drug deals for small profits, there was also a call from an informant attempting to purchase cocaine from Cooper which was apparently recorded. (PSR ¶10). Further calling Cooper's minimization into question is large street value of the drugs recovered

---

1 The PSR indicates eight ounces of cocaine, but it appears the DEA reports indicate nine ounces of cocaine.

from Cooper. The total amount street value, as estimated by the DEA of the drugs recovered from Cooper's residence was $20,000. There was also nearly $4,000 within the residence. With two firearms and various ammunition recovered in the residence, Cooper qualifies as an armed drug dealer trafficking in significant amounts of different controlled substances.

Cooper was not a dime level dealer or a man testing the waters of the drug trade. The extensive amounts of sundry controlled substances recovered from Cooper's residence almost certainly indicate a significant and lengthy participation in the drug trade.

### B. Cooper's history and characteristics warrant a 90 month sentence

Cooper presents a conundrum for any sentencing judge. On one hand, there is the individual lauded by his family, a devoted uncle, brother, and son. (Def. Sent. Mem. A-M). On the other, there is the individual who committed this offense, who deals drugs on a relatively large scale. There is the man who is constantly tending to his family and enjoys and has enjoyed their consistent support, and the man who was involved in a pre-planned and organized armed robbery wherein he beat

˘ 3 ˘

a naked man with his firearm.

Cooper's criminal record is troubling. Cooper's older criminal record – consisting of Possession of Cocaine and Felon in Possession of Firearm cases when he was 20 and 23 – are cases that occurred when he was much younger. (PSR ¶¶30-31). More troubling is Cooper's 2004 conviction for unarmed robbery and felon in possession of a firearm. (PSR¶ 34). Cooper was 28 years old at the time of the offense, and that case cannot be attributed to youth. Cooper took part in a set-up robbery of two individuals who invited a stripper back to their room for cocaine and other activities. These victims, while hardly exercising stellar decision-making, did not deserve what Cooper put them through. Cooper and his co-actor forced the victims to strip and then Cooper ultimately beat one of the victims several times with a firearm. (PSR ¶34). His co-actor shot the other victim in the ear. This brutal crime resulted in an eight year sentence. (*Id.*) In addition Cooper was not a model prisoner, with 15 infractions while in custody. (*Id.*)

Cooper was released on parole in June 2012, and discharged from parole two years later. Unfortunately, less than one year after his

discharge from parole, he was under arrest for this matter. Cooper's letter details his attempts to align himself with the law and the struggles after his release. (Def. Sent. Mem. Ex. A). The government acknowledges that it is likely difficult for any ex-offender to re-enter the job market, and likely even more difficult after release for a lengthy sentence for an extremely serious crime, the exact situation that Cooper faced. Cooper's story is compelling, but the high level of criminal activity that he entered into goes beyond the desperation of an individual simply trying to make ends meet—it instead constitutes high level dealing with the potential for high profit.

Cooper's tragic upbringing clearly plays a role in his presence before the Court today. It is yet another case of this Court seeing an individual endure a childhood that no one should have to endure. Most disappointing about this matter is that drugs—specifically crack/cocaine—have had a significantly detrimental effect on Cooper's life, yet he does not seem to comprehend that his own drug dealing could do the same to others. The PSR, and one of the letters in support of defendant notes specifically the role that crack/cocaine played in robbing Cooper of a functional childhood through

˘ 5 ˘

the addiction of parents to crack/cocaine. (PSR ¶45, Def. Sent Mem, Ex. K). It is sad and apparently unnoticed by Cooper that the very same substance that played a large role in damaging his childhood he sends out in the community to destroy the lives of others. Cooper's history may have demonstrated to him the dangers of these substances to himself as he reports no historical use of cocaine or any "hard" drug. (PSR ¶51). It has not prevented him from spreading that drug to others.

C. Cooper's requested sentence asks the Court for too much

A Court should always consider the individual characteristics of a defendant, and craft a sentence that considers the guidelines as well as the all of the factors. But Cooper here asks the Court to vary from the guidelines by 33%, based predominantly on the letters submitted to the Court. These letters are compelling and provide a fuller picture of who Mr. Cooper is, but they should not give a man with a serious criminal record who has escalating criminal behavior such a drastic reduction.

Such a variance is especially not warranted when the government has already considered the possible sentence in its plea offer. Had the government demanded that Cooper plead guilty to one of the controlled substance offenses instead of a felon in possession of

˘ 6 ˘

firearm count in addition to Cooper's 18 U.S.C. §924(c) matter, Cooper would have guidelines of 106-117 months instead of 90-97 months. While it is unlikely that the crack/cocaine in this matter would ultimately have broken the one ounce mark, the government could have sought to expedite those results to seek a second mandatory minimum which would have required the Court to issue a ten year sentence. The government, taking the totality of the circumstances into account, deliberately chose to offer a resolution that did not involve the higher guideline range or a ten year mandatory minimum. That does not, however, indicate that a further reduction to 60 months is appropriate. Such a resolution would unnecessarily depreciate the seriousness of the offense and detract from the goals of both individual and general deterrence.

  II. Conclusion

  The Court should sentence Cooper to 90 months imprisonment. Considering the failure of an eight year sentence to reform his behavior, a lengthy sentence is appropriate to protect the public from Cooper's further crimes, to deter himself and others from criminal behavior, and

to promote respect for the law. 18 U.S.C. §§3553(a)(1) and (2)(A-D).

Respectfully Submitted,

                                        BARBARA L. McQUADE
                                        United States Attorney

Dated: August 14, 2015         s/CHRISTOPHER W. RAWSTHORNE
                                        Assistant United States Attorney
                                        600 Church Street
                                        210 Federal Building
                                        Flint, Michigan 48502-1280
                                        Phone: (810) 766-5035
                                        Email: Christopher.Rawsthorne@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2015, the foregoing document was electronically filed by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

All attorneys of record.

s/JESSICA STANTON
United States Attorney's Office
600 Church Street
Flint, Michigan 48502-1280